IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONJA FELICIA BRADEN,<br><br>    Plaintiff,<br><br>v.<br><br>BH FINANCIAL SERVICES, INC, ET AL,<br><br>    Defendant.<br>_____/ | No. C 13-02287 CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS; GRANTING MOTION FOR FEES** |

      This case, about a $5,075 loan, is the companion case to Le v. Sunlan Corp., 13-707. The Court recently granted the defendants' motions in Le for judgment on the pleadings and for fees in connection with their earlier successful anti-SLAPP motion. See Order in Le, No. 13-707 (dkt. 68). Defendants in this case now bring the same two motions.[1]  As explained below, the Court grants in part and denies in part the motion for judgment on the pleadings, and grants the motion for fees.

**I.    BACKGROUND**

      Plaintiff Sonja Braden took out a loan from non-party CashCall, Inc. Compl. (dkt. 1-1) ¶ 18. After Plaintiff stopped making payments on her loan, CashCall sold the debt at a loss to Defendant Mountain Lion Acquisitions. Id. ¶ 22. Braden alleges that the debt was

---

[1] Accordingly, just as the parties' briefing here borrows substantially from their briefing in Le, this Order overlaps substantially with the Order in Le, No. 13-707.

1  then sold to Defendant BH Financial Services, Inc. Id. ¶ 31.  After purchasing the debt, BH
2  Financial filed a state court collection action against Plaintiff. Id. ¶ 41.  BH Financial filed a
3  "Declaration of Authorized Agent in Lieu of Live Testimony" in the state case, in which,
4  Plaintiff alleges, it misrepresented that the signatory was the "duly authorized custodian of
5  books and records" for CashCall, and that it had personal knowledge of the debt. Id. ¶¶ 49-
6  50.  Four days before trial, BH Financial unilaterally dismissed the state court action against
7  Plaintiff without prejudice. Id. ¶ 57.

   Plaintiff filed this lawsuit in May 2013, alleging malicious prosecution, as well as
9  claims under the Fair Debt Collection Practices Act ("FDCPA"), California's Rosenthal Fair
10 Debt Collection Practices Act ("RFDCPA"), and California Finance Lender Law. See
11 generally id.  Plaintiff's primary theory of liability is that CashCall violated Financial Code
12 section 22340[2] when it sold her debt to Defendant Mountain Lion, which voided the debt.
13 See id. ¶ 104 ("As a result of CashCall, Inc.'s willful violation of Cal. Financial Code §
14 22340(a), the debt is void and noncollectable, pursuant to Cal. Financial Code § 22750(b).").
15 Plaintiff alleges that Defendants' effort to collect on her debt was therefore "an action that
16 cannot lawfully be taken." Id. ¶ 51.

   Defendants moved to strike the RFDCPA and malicious prosecution claims from the
18 Complaint, arguing that this is a "SLAPP" suit—a Strategic Lawsuit Against Public
19 Participation—and that those two claims arise out of Defendants' protected activity of filing
20 suit against Plaintiff. See Mot. to Strike (dkt. 23) (citing Cal. Code Civ. P. § 425.16(b)(1)).
21 The Court granted that motion, holding among other things that Plaintiff did not have a
22 probability of prevailing on those claims, because section 22340 "applies strictly to real

---

[2] Section 22340(a) provides that

> A licensee may sell promissory notes evidencing the obligation to repay loans made by the licensee pursuant to this division or evidencing the obligation to repay loans purchased from and made by another licensee pursuant to this division to institutional investors, and may make agreements with institutional investors for the collection of payments or the performance of services with respect to those notes.

Cal. Fin. Code § 22340.

2

1 estate backed loans" and therefore "simply does not apply to Plaintiff's loan, which was not
2 backed by real estate." Order (dkt. 52) at 6.

3 Defendants now move for judgment on the pleadings on the remaining claims, see
4 generally Mot. for JOP (dkt. 54), and for fees in connection with the anti-SLAPP motion, see
5 generally Mot. for Fees (dkt. 55).

**II. DISCUSSION**

  **A. Motion for Judgment on the Pleadings**

  **1. Legal Standard**

Judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990) (citation omitted). When a party invokes Rule 12(c) to raise the defense of failure to state a claim, the motion faces the same test as a motion under Rule 12(b)(6). Wood v. County of Alameda, 875 F. Supp. 659, 661 (N.D. Cal. 1995). "A dismissal on the pleadings for failure to state a claim is proper only if the movant clearly establishes that no material issue of fact remains to be resolved. . . ." McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988).

  **2. Discussion**

Defendants' motion for judgment on the pleadings argues that Plaintiff's remaining claims fail for the same reason that the Court struck the RFDCPA and malicious prosecution claims: both "depend on the premise that CashCall violated Financial Code section 22340 when it sold her bad debt to BH Financial. This Court has already decided that premise is false." Mot for JOP at 4. That argument is largely correct. The Court held unambiguously that section 22340 "applies strictly to real estate backed loans," that Plaintiff's interpretation of section 22340 was "strained" and supported by "no authority," and that "[e]ven if that section prohibits any conduct–an interpretation that is not supported by the plain language–it simply does not apply to Plaintiff's loan, which was not backed by real estate." Order at 6.

3

1 Based on that holding, the Court found that Plaintiff could not demonstrate a probability of
2 prevailing.  Id.

3 For the most part, Plaintiff does not deny that her remaining claims rely on the same
4 interpretation of section 22340 that the Court has already rejected.  See Opp'n to Mot. for
5 JOP (dkt. 57) at 18 (arguing that because Defendants willfully violated section 22340(a), the
6 debt is void under section 22750(b), and therefore Defendants' attempts to collect the debt
7 misrepresented the debt's legal status, which violates the FDCPA).  She argues instead that
8 the Court's interpretation of section 22340 is wrong.  See id. at 8-16.  Specifically, Plaintiff
9 argues that the Court need not look to the statute's legislative history, which Defendants
10 discuss at length, see Mot. for JOP at 5 ("Legislative history leaves no doubt that Section
11 22340 was enacted to address" problem with real estate backed loans), and which the Court
12 noted, see Order at 6, but should look to the law's "plain language," Opp'n to Mot. for JOP
13 at 8.  The problem with this argument–aside from the not insignificant fact that the Court has
14 already decided this question, see Angeles v. U.S. Airways, Inc., No. 12-05860, 2013 WL
15 3243905, at *1 (N.D. Cal. Jun. 26, 2013) (applying law of the case doctrine)–is that the plain
16 language of the law does not support Plaintiff's interpretation, see Opp'n to Mot. for JOP at
17 15 (arguing that word "may sell promissory notes" in statute "must be read as 'may only sell
18 promissory notes," thus prohibiting all other conduct), and that Plaintiff, too, purports to rely
19 on legislative history, see id. at 12 ("Clearly it was the Legislature's intent . . .").

20 The Court will not revisit its holding that section 22340 does not apply to the loan at
21 issue.  Because section 22340 does not apply, it was not violated, and the remaining
22 claims–to the extent that they are premised on the violation of section 22340–fail.

23 So far, the above analysis is entirely in step with the Court's holdings in Le.  Plaintiff
24 argues, however, that this case is different from Le because here Plaintiff alleges that
25 Defendants violated the FDCPA not only by seeking to collect a void debt, but also when
26 they made false representations in their "Declaration of Authorized Agent in Lieu of Live
27 Testimony."  Opp'n to Mot. for JOP at 2 ("BRADEN alleges that these misrepresentations,
28 which are not connected to the California Finance Lenders Law, are additional violations of

4

the FDCPA."). Indeed, the Complaint alleges that Defendants violated the FDCPA by attempting to collect the debt, but also by, among other things, making "false, deceptive and misleading misrepresentations in an attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10)," "misrepresent[ing] that MOUNTAIN LION was lawfully entitled to collect the debt from Plaintiff, in violation of 15 U.S.C. §§ 1692e, 1692e(5), 1692e(8), and 1692e(10)," and "misrepresent[ing] that BH FINANCIAL was lawfully entitled to collect the debt from Plaintiff, in violation of 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10)." Compl. ¶ 69(a), (e), (f).[3] 15 U.S.C. § 1692e provides that "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e(10) specifically prohibits "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Importantly, Defendants do not address this issue whatsoever in either their initial motion or their reply brief. Defendants state that "For there to be a violation of the FDCPA under Braden's theory, her loan must have become 'void.' The mechanism by which that occurs, according to Braden, is Financial Code section 22750(b)." Reply re Mot. for JOP (dkt. 58) at 6. Defendants also contend that Plaintiff does not "complain [that] CashCall violated any law when it tried, without success, to collect her loan," but instead "complains of a different kind of activity altogether, selling the loan to a third party." Id. at 7. These assertions, while true in Le, are wrong here, as they overlook the Complaint's allegations about misrepresentations in the state court collection efforts. See Compl. ¶ 69(a), (e), (f).

The Court therefore GRANTS the Motion for Judgment on the Pleadings as to the remaining claims, to the extent that they are premised on the violation of section 22340,

---

[3] Plaintiff also cites to Compl. ¶ 69(b) on this point, but that paragraph alleges that "Defendants misrepresented the character, amount or legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A)," and the alleged misrepresentations in the "Declaration of Authorized Agent in Lieu of Live Testimony" do not strike the Court, at this juncture, as going to the character, amount or legal status of the debt itself. See Opp'n to Mot. for JOP at 2 n.4.

5

and DENIES that Motion as to the FDCPA claim, to the extent that it relies on misrepresentations under section 1692e and 1692e(10).[4]

### B. Motion for Fees

#### 1. Legal Standard

The "prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1). "[A]ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." Ketchum v. Moses, 24 Cal. 4th 1122, 1131 (2001). "[A] court assessing attorney fees begins with a touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case." Id. at 1131-32. An award of fees and costs in an anti-SLAPP case must be reasonable, and courts have broad discretion in determining what is reasonable. See Metabolife Intern., Inc. v. Wornick, 213 F. Supp. 2d 1220, 1222 (S.D. Cal. 2002). The degree of success obtained is the most critical factor in determining a reasonable fee. Farrar v. Hobby, 506 U.S. 103, 114 (1992).

#### 2. Discussion

Defendants seek a total of $29,294 in connection with their anti-SLAPP motion. See Fees Mot. at 1. This is considerably less than the $47,031 that Defendants sought, and received, in the Le case, see Order in Le, No. 13-707 at 5, because, Defendants say, they were "able to rely on [their] briefing in the Le matter" and because they were able to employ a third attorney to do the bulk of the work at a lower rate, see Mot. for Fees at 2, Reply re Fees (dkt. 4) at 4. Plaintiff argues that the sum nonetheless results from an unreasonable amount of time billed (73.4 hours), and an unreasonably high billing rate for the two Katten Muchin Rosenman LLP partners ($610/hr.) and attorney Sepehr Daghighian ($310/hr.). See Opp'n to Fees Mot. (dkt. 60) at 2.

//

---

[4] The Court does not now hold that a misrepresentation about whether someone is a custodian of records either does or does not state a claim for violation of the FDCPA, only that Defendants failed to move to dismiss such allegations.

### a. Hours Billed

To determine the reasonable number of hours billed, courts are to evaluate the time expended, the nature of and need for the services performed, and the relevant fee records. Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983). Defendants submit evidence that Gregory Korman and Ryan Larsen, the two Katten partners, spent 11.3 hours researching the applicable substantive law and legislative history regarding Plaintiff's claims, drafting the anti-SLAPP motion and its supporting declarations, analyzing Plaintiff's opposition to the anti-SLAPP motion, drafting a reply in support of the anti-SLAPP motion, analyzing Plaintiff's separate motion to take discovery to oppose the anti-SLAPP motion, and drafting an opposition to Plaintiff's motion, and attending the relevant hearings. See Fees Mot. at 6-7; Korman Decl. (dkt. 55-1) ¶¶ 9-10 (describing work done), Ex. A (billing invoices). Defendants submit further evidence that Daghighian spent 45.1 hours on many of these same tasks. See Fees Mot. at 7; Daghighian Decl. (dkt. 55-2) at ¶ 8. The three attorneys for Defendants here therefore claim a total of 56.4 hours on these tasks–11.3 for the Katten partners and 45.1 for Daghighian.[5] Defendants further expect to spend 17 hours in connection with this fees motion: 10.5 for the Katten partners and 6.5 for Daghighian. See Fees Mot. at 7; Korman Decl. ¶ 11 (describing anticipated work on fees issue); Daghighian Decl. ¶ 10.[6] This yields a total of 73.4 hours.[7] They argue that the time spent was necessary because Plaintiff's theory that Defendants could not legally collect the debt it had purchased "threatened to unravel Mountain Lion and BH Financial's business model" and because, in prevailing on the anti-SLAPP motion, Defendants effectively disposed of "all of Plaintiff's claims"–an assertion the Court finds some fault with, as described above.

Plaintiff argues that the time spent was "grossly excessive."

---

[5] In Le, the two Katten partners sought compensation for 65.1 hours spent on the same tasks. See Order in Le, No. 13-707 at 5.

[6] In Le, the two Katten partners had anticipated spending 12 hours on the fees motion tasks. See Order in Le, No. 13-707 at 5. At the motion hearing in Le, Defendants represented that they had in fact spent more than 12 hours on the fees motion.

[7] In Le, the two Katten partners sought compensation for a total of 77.1 hours. See Order in Le, No. 13-707 at 5.

First, Plaintiff argues that because only one of the Katten partners, Korman, submitted a declaration, Defendants should not be able to recover the other Katten partner's (Larsen's) time. Opp'n to Fees Mot. (dkt. 60) at 3-4. But Defendants also submitted billing records reflecting both partners' time, which are not hearsay but business records of the Katten firm. See Fed. R. Evid. 803(6); Fireman's Fund Ins. Co. v. Stites, 258 F.3d 1016, 1023 (9th Cir. 2001). Korman's declaration demonstrated personal knowledge of how Katten generates such billing records. See Korman Decl. ¶ 8. This objection is therefore without merit.

Next, Plaintiff objects to Defendants' use of three attorneys to do "exactly the same work" and to their seeking payment for the same research and briefing already done in the Le case. Opp'n to Fees Mot. at 4-6. Plaintiff's argument about three attorneys having billed for reviewing and writing the anti-SLAPP motion is unconvincing: it is routine for multiple attorneys to collaborate on a "bet the company" matter.[8] Plaintiff's complaint that the time spent here "should reflect a significant reduction in the time claimed by defense counsel for researching, drafting and revising the anti-SLAPP motion" as compared to Le, Opp'n to Fees Mot. at 5, is more persuasive. The combined 56.4 hours sought on the anti-SLAPP here is not considerably less than the 65.1 hours spent in Le. It probably took Daghighian some time to get up to speed, having not worked on Le,[9] but because of his lower rate, it might still have cost less money than to have the Katten partners do the drafting themselves. Ultimately the Court cannot point to any one anti-SLAPP-related time entry in Daghighian's records as excessive, and nor can Plaintiff.

Plaintiff also argues that the time Defendants spent related to the discovery motion should be disallowed. Opp'n to Fees Mot. at 6-7. As the Court explained in Le, this argument fails because work that is inextricably intertwined with an anti-SLAPP motion is also compensable. See Graham-Sult v. Clainos, No. 10-4877, 2012 WL 994754, at *4 (N.D.

---

[8] Similarly, there is nothing amiss with both the Katten partners and Daghighian billing for this fees motion. See Opp'n to Fees Mot. at 5. However, as the Court awarded 12 hours of fees in connection with the fees motion in Le, the Court awards 12 hours again here: 10.5 hours for the Katten partners (at $610/hr.) and 1.5 hours for Daghighian (at $310/hr.).

[9] Daghighian did not appear in Le until February 2014, after the Court granted the fees motion. See Notice of Appearance in Le, 13-707 (dkt. 70).

8

Cal. Mar. 23, 2012) (granting defendants' fee requests for work performed directly on anti-SLAPP motion, in addition to "inextricably intertwined" work on indemnity and case management issues), affirmed in part and vacated in part by Graham-Sult v. Clainos, No. 11-16779, 12-15892, 2013 WL 6820452 (9th Cir. Dec. 27, 2013) ("district court did not abuse its discretion by awarding fees for these activities"); Henry v. Bank of Am., No. 90-628, 2010 WL 3324890, at *3-4 (N.D. Cal. Aug. 23, 2010) (including in anti-SLAPP fee award time spent litigating "discovery initiated by the opposing party . . . directly related to the motion to strike").  The very purpose of the discovery motion here was "to conduct discovery or otherwise obtain and present facts essential to justify [Plaintiff's] opposition to Defendants' Special Motion to Strike."  Discovery Mot. (dkt. 33) at 2.  The work opposing that motion was inextricably intertwined with the work on the anti-SLAPP motion itself.

Plaintiff makes a related, though more successful, argument that the fees motion "seeks an award for work unrelated to the anti-SLAPP motion."  Opp'n to Fees Mot. at 6.  Plaintiff points to entries in the Katten partners' billing for reviewing a motion to dismiss and revising a motion to consolidate cases.  Id. (citing Korman Decl. Ex. A at 2).  The Court agrees that those entries are unrelated to (and not inextricably intertwined with) the anti-SLAPP motion and therefore will reduce the Katten hours from 11.3 to 10.4.  Plaintiff also objects to numerous Daghighian entries which relate to events occurring before the anti-SLAPP motion.  Opp'n to Fees Mot. at 6.  The Court agrees that there are some entries unrelated to the anti-SLAPP motion[10] and therefore will eliminate 1.8 hours from 6/26/13 relating to the Answer, 4.2 hours from 6/27/13 relating to the Complaint, 1.2 hours from 7/1/13 relating to a motion to dismiss, 1 hour from 7/9/13 relating to the motion to deem matters related,[11] 2.5 hours from 7/9/13 relating to the Answer, .3 hours from 7/10/13 relating

---

[10] Defendants' assertion that "Mr. Daghighian necessarily had to spend time on the 'intake of case file' to understand the claims against his clients," Reply at 5, proves too much. By that logic, Defendants should also submit Daghighian's law school tuition bills. See Kearney v. Foley & Lardner, 553 F. Supp. 2d 1178, 1183-84 (S.D. Cal. 2008) (defining intertwined as involving "a common core of facts and . . . based on related legal theories").

[11] This is part of a block entry that might also include relevant work.

9

1  to reviewing the file, 1 hour from 7/10/13 relating to the Answer, and 1 hour from 7/22/13
2  relating to the Answer,[12] thus reducing the total Daghighian hours from 45.1 to 32.1.
3         Plaintiff's final argument on the number of hours billed is that "[t]here was nothing
4  exceedingly complex" about the case, and that the anti-SLAPP motion was "of dubious
5  utility, " striking "only two of plaintiff's claims." Opp'n to Fees Mot. at 7.  This argument is
6  misguided.  Plaintiff made a novel legal argument by taking a narrow provision of the
7  Finance Lender Law out of context: it took a fair amount of work to disprove that.
8  Moreover, the anti-SLAPP motion could not have attacked the federal FDCPA claim,
9  see Hilton v. Hallmark Cards, 599 F.3d 894, 901 (9th Cir. 2010), and the Court's Order on
10 the anti-SLAPP motion did away with all but a sliver of the remaining case.[13]
11        In light of the above, the Court will allow 10.4 hours for the Katten partners and 32.1
12 hours for Daghighian for the anti-SLAPP work, and 10.5 hours for the Katten partners and
13 1.5 hours for Daghighian on the fees motion, for a total of 54.5 hours.

### b.  Rate

15        To determine the reasonable hourly rate, courts are to look to the rates customarily
16 charged for work of the type performed in the relevant legal community, the reputation and
17 experience of the attorneys who performed the services, the quality of counsel's services on
18 behalf of their client, the complexity of the work performed, and the results achieved.
19 Pennsylvania v. Delaware Valley Citizens Council, 478 U.S. 546, 556-57 (1987).
20 Defendants submit evidence that Korman and Larsen are both partners in the Los Angeles
21 office of Katten who have each been practicing for over ten years, and who are both Super
22 Lawyers Rising Stars.  See Fees Mot. at 7; Korman Decl. ¶¶ 3, 6.  Each bill their time at $610
23 per hour.  See Fees Mot. at 7, Korman Decl. ¶4, ¶ 7.  They further submit evidence that
24 Daghighian, a managing attorney who has been practicing for over eight years, bills his time
25 at $310, and that Defendants are indeed paying that rate in this case.  Daghighian Decl. ¶ 5.

---

[12] This is part of a block entry that does include some work on the anti-SLAPP motion.

[13] Plaintiff further complains that Defendants' counsel had no experience on anti-SLAPP motions and are therefore "attempting to shift the cost of educating its attorneys on the anti-SLAPP laws to plaintiff."  Opp'n to Fees Mot. at 8.  There is no evidence to support this assertion.

Plaintiff's objections to these rates as "outrageous and unsupported," Opp'n to Fees Mot. at 8, are unpersuasive. The Court just held in Le that these same Katten partners are entitled to their $610 rate. See Order in Le, No. 13-707 at 9. Daghighian declares that his $310 rate is within the reasonable range of rates in Beverly Hills, where he practices. Id. ¶ 6. Defendants cite, among other things, to Rosenfeld v. U.S. Dep't of Justice, 904 F. Supp. 2d 988, 1001-02 (N.D. Cal. 2012), which approved an award of $650-730 per hour for very experienced counsel, and noted that entry-level associates in this area bill at $225-395.

The Court finds that the Katten partners' $610/hour rate and Daghighian's $310/hour rate are reasonable.

### c.     Conclusion as to Requested Award

Given the hours and rates above, the Court will award a total of $23,165 in fees:

| Katten anti-SLAPP | 10.4 hours x $610 rate | = $6,344 |
| Daghighian anti- SLAPP | 32.1 hours x $310  rate | = $9,951 |
| Katten fees motion | 10.5 hours x $610 rate | = $6,405 |
| Daghighian fees motion | 1.5 hours x $310 rate | = $465 |

Total =  $23,165

The Court notes that Plaintiff requests a stay of the ruling on the fees motion while an appeal of the anti-SLAPP motion is pending. See Opp'n to Fees Mot. at 10. Plaintiff provides no authority for that request aside from Federal Rule of Appellate Procedure 8. See id. As Defendants point out, Plaintiff has not appealed the anti-SLAPP order, and so–as the Court held in Le–Rule 8 does not apply. See Reply re Fees Mot. at 12. Moreover, Judge Ryu recently denied a losing anti-SLAPP plaintiff's request to stay a fee motion while appeal was pending, explaining that a district court has the power to decide fees during an appeal and that doing so promotes judicial efficiency. See Smith v. Payne, No. 12-1732, 2013 WL 1615850, at *2 (N.D. Cal. April 15, 2013). The same reasoning applies here, where appeal has not yet been taken.

//

//

11

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART the Motion for Judgment on the Pleadings as to all claims premised on violation of Financial Code section 22340, and DENIES IN PART that Motion as to the piece of the FDCPA claim that relies on misrepresentations under section 1692e and 1692e(10).  The Court further GRANTS the Motion for Fees in an amount of $23,165.

**IT IS SO ORDERED.**

Dated: March 4, 2014

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE